DWIGHT MURPHY and CORNELL UNIVERSITY v. DWIGHT MURPHY and THERESA GENETIVE MURPHY, as Executors, and JAMES A. POWERS, as Administrator *cum testamento annexo* of the Estate of Albert C. Murphy, deceased, *et al.*

170 So. 856.
Opinion Filed October 26, 1936.
Rehearing Denied December 10, 1936.

858

*Shutts & Bowen, Crate D. Bowen, P. G. Prevatt, E. S. Quick, Hudson & Cason, G. M. McNutt, Heaney, Price, Postel & Parma* and *John William Heaney* (of Santa Barbara, California), for Appellants;

*Redfearn & Ferrell, D. H. Redfearn, Kurtz & Reed, R. A. Sappenfield, Gwinn & Pell* and *Wm. J. Dunn,* for Appellees.

Davis, J.—Albert Charles Murphy, while visiting Beverly Hills, California, died on January 25, 1933. At that time he was a citizen of the State of Florida, having his permanent residence at Miami Beach in Dade County. He was survived by his widow, but no descendants. His last will and testament, executed at Miami Beach, Florida, on January 19, 1931, to which was annexed a codicil signed December 11, 1932, at Beverly Hills, Los Angeles County, California, was first filed for probate and admitted to probate in the State of New York as the will of a non-resident of that State.

The will named as co-executors the testator's wife, Theresa Genetive Murphy, his brother, Dwight Murphy, and

the Guaranty Trust Company of New York. The executors so named in the will duly qualified in the Surrogate's Court of New York County, New York. Thereafter, on January 9, 1934, the will was admitted to probate in Dade County, Florida. Subsequently, the executors and an administrator *cum testamento annexo,* who had been appointed by the Florida Court, procured an order setting aside the original Florida probate of January 9, 1934, on the ground that the will had not been proven on that attempt to probate, as required by law. Thereafter, on August 18, 1934, due and acceptable proof of the execution of the will having been made to the satisfaction of the County Judge of Dade County sitting as a judge of probate, an order was entered reprobating the will and appointing the same executors and administrator *cum testamento annexo.*

This suit was instituted in the Chancery Court of Dade County, Florida, for the purpose of a construction of the will, a determination of the rights of the widow, Theresa Genetive Murphy, in relation to the will and the rights of the legatees under the will. The executors and the Florida administrator *cum testamento annexo* were complainants in the court below, while the widow and legatee named in the will were joined as defendants. All except Grace Munsey Galbraith and William Norton answered. The case is now before this Court upon the appeal of Dwight Murphy, one of the legatees, and Cornell University, from the final decree entered in the cause.

The final decree appealed from (omitting its recitations) ordered, adjudged, decreed and declared as follows:

"(1) The first question presented in the prayer to the amended bill is as follows:

"1. (a)—Has the widow herein, Theresa Genetive Murphy, whose husband's domicile was at the time of his death,

in the State of Florida, the right to dissent from the provisions of the will and elect in lieu thereof to take dower in this estate?

"(b)—If so, at what time does the election of dower by the widow take effect?

"In response to Question 1 (a), the court does hereby declare and decree that the widow, Theresa Genetive Murphy, whose husband's domicile was, at the time of his death, in Dade County, Florida, has the right to dissent from the provisions of the will and elect in lieu thereof to take dower in his estate.

"In response to Question 1 (b), the court does hereby declare and decree that, when the widow elected to take dower, said election took effect as of January 25, 1933, the date of the death of her said husband, Albert Charles Murphy.

"(2) The second question presented in the prayer to the amended bill is as follows:

"2.—There being no children nor any lineal descendants of the deceased, what portion of his estate is the widow entitled to, upon distribution, pursuant to the filing of her election to take dower?

"In response to Question 2, the court does hereby declare and decree that, as there were no children and no lineal descendants of the deceased, and as the evidence shows that his estate consisted entirely of personal property, the widow upon her election to take dower is entitled to one-half of the gross estate as it existed at the date of the death of the deceased, together with mesne profits on her dower portion of the estate up to the date of the assignment and delivery of her dower to her. It appears from the evidence that prior to the probate of the will in Dade County, Florida, and before the widow had an opportunity to elect against

the will in this State, the executors sold certain personal property used on the yacht 'Shogun,' owned by the testator at the time of his death, and delivered the proceeds of the sale to the widow. She is, therefore, ordered and directed to account for said proceeds at the time of the assignment of her dower. The Court does not consider or declare that she is estopped to elect against said will by having accepted said proceeds before she had an opportunity to elect in this State.

"(3) The third question presented in the prayer to the amended bill is as follows:

"(3)—Does the election by the widow herein, to take dower in the estate, have priority over the specific bequests contained in said will and codicil thereto, and the residuary. legatees?

"In response to Question 3, the court does hereby declare and decree that the dower of the widow in said estate has priority over any specific or general bequests contained in said will and codicil thereto, and over the residuary legacies.

"(4) The fourth question presented in the prayer to the amended bill is as follows:

"4—Does the election by the widow to take dower make inoperative the provisions of said will made for her benefit?

"In response to Question 4, the court does hereby declare and decree that the election by the widow to take dower makes inoperative the provisions of the will made for her benefit.

"(5) The fifth question presented in the prayer to the amended bill is as follows:

"5—In this case, the widow herein has elected to take dower in lieu of the provisions made for her benefit in said will; is such portion of the estate to which she is entitled by virtue of such election, subject to:

"(a) Claims of creditors?

"(b) Administration costs and expenses?

"(c) Estate taxes—state or federal?

"In response to question 5 (a), (b), and (c), the court does hereby declare and decree that the dower of the widow is not subject to the claims of creditors, administration costs and expenses, or estate taxes, inheritance taxes, and succession taxes, state or federal, against the estate. Such claims, costs, expenses, and taxes shall be paid out of the half of the gross estate remaining in the custody of the executors after the widow's dower has been set apart to her.

"(6) The sixth question presented in the prayer to the amended bill is as follows:

"(6)—Upon the exercise of election by the widow herein to take dower does such action nullify all the provisions of said will; if not, what remaining provisions remain effective?

"In response to question 6, the court does hereby declare and decree that the election of the widow to take dower does not nullify all the provisions of said will, and that, with the exception as to the provisions made for the widow in said will, it remains effective as to that portion of the estate left after the widow's dower has been set apart.

"(7) The seventh question presented in the prayer to the amended bill is as follows:

"7 (a)—What effect does the election of dower by the widow have, after setting apart that portion of the estate to which she is entitled, upon the division and distribution of the remaining portion of the estate?

"(b)—What is the order or priority among the other beneficiaries in the distribution of the remaining portion of the estate?

"In response to question 7 (a) and (b), the court does hereby declare and decree that the assignment of dower to the widow has no effect on the provisions of the will except as to the legacies provided in the will for the widow, which become a nullity so far as she is concerned after she elects against the will. It is further declared and decreed that the order of priority among the other beneficiaries named in the will, in the distribution of the remaining portion of the estate, remains the same as though the widow had not elected to take dower. In this case, the residuary legacies will be consumed first in the payment of costs, administration expenses, claims of creditors, and state and federal or succession taxes, and other legal charges against the estate. If there should not be sufficient funds in the residuum, the rules of law as to the abatement of general and specific legacies shall then apply.

"(8) The eighth question presented in the prayer to the amended bill is as follows:

"8—What effect, if any, does the widow's election to take dower have on her right to compensation for acting as executor in the administration of the estate?

"In response to question 8, the court does hereby declare and decree that the renunciation by the widow of her husband's will and her election to take dower does not deprive her of her right to compensation for acting as executrix in the administration of the estate.

"(9) The foregoing questions were propounded in the special prayers of the amended bill of complaint. The prayers in the amendment to the amended bill of complaint propound in effect the following question:

"9—Does the widow have the right to one-half of the stock in the Transportation Equipment Company of Canada, Ltd., and at the same time the right to require the estate,

out of the remaining one-half, after her dower has been set apart, to pay the debt due by the estate to the Transportation Equipment Company of Canada, Ltd.?

"The evidence in this case discloses that the Transportation Equipment Company of Canada, Limited, was chartered in Canada on February 6, 1924; that it has never been dissolved; that the company's tax required of it by the Dominion of Canada has been paid regularly by said corporation both before and after the death of the said Albert Charles Murphy; that its original charter authorized the issuance of five hundred shares of capital stock, no par value; that in 1928 the charter of the company was amended so as to increase the capital stock of the company to one thousand shares, no par value; that all the shares authorized by the original charter were issued, and eighty-two shares of the five hundred shares authorized by the amendment to the charter; that there were four hundred eighteen shares which were never issued; that at the time of the death of said Albert Charles Murphy he owned five hundred seventy-eight shares of said issued stock which had been duly assigned to him by previous stockholders, and which had been reissued in his name under resolutions of the board of directors, as required by the charter and by-laws of the company; and that the other four shares of said issued stock in said company were outstanding in the names of four other persons, and said four shares had never been transferred to anyone by said four shareholders in the manner required by the charter of the company and the by-laws. The court finds that said corporation was a separate corporate entity and that it was the intention of the testator to treat it as such, which intention never changed. The Court declares and decrees that the widow, in taking dower, will not be entitled to one-half of the five hundred eighty-

two shares outstanding, but only to one-half of the five hundred seventy-eight shares standing in the name of the deceased at the time of his death.

"The court further declares and decrees that the evidence discloses that there was due by the deceased, Albert Charles Murphy, to the Transportation Equipment Company of Canada, Limited, at the time of his death, the sum of $245,-647.08 on a note or bond signed by him to said company, which had been secured by a mortgage signed by him on his yacht 'Shogun'; that the indebtedness represented by said note and mortgage has never yet been paid, and that the interest thereon is in default from January 1, 1933, at the rate of three per cent. per annum. The Court further declares and decrees that out of the one-half of the gross assets of said estate remaining after the widow's dower has been set apart to her, the said claim of the Transportation Equipment Company of Canada, Limited, must be paid. It further appears that said yacht has been sold by the executors, and that, as a result of the economic depression, only $72,600.00, or approximately that amount, was obtained by the executors for said yacht, which proceeds were and are an asset of the entire gross estate and for which the estate has received the benefit. As the widow, under her claim for dower, is interested only in the assets of the estate and not in the liabilities, it is declared and decreed that neither she nor any part of the dower assigned to her shall be responsible for the payment of any part of the said indebtedness due to the Transportation Equipment Company of Canada, Limited, and that same shall be paid out of the one-half of the estate remaining in the custody of the executors after her dower has been set apart.

"(10) One other question as follows was argued at length before the court:

"10—Since the widow has elected against the will, should the $500,000.00 bequest made for her benefit in the sixth item of the will, and for the benefit of the remaindermen named therein, be set up as a general legacy in trust for the benefit of the remaindermen in being at the time her election to take dower became effective?

"Under item six of the will the testator bequeathed $500,000.00 to the trustees named in the will, the same to be held in trust for the purpose of investment and the proceeds to be paid to the beneficiaries as named in said item six. It is first provided that the income shall be paid to his wife for life, annually, in quarterly installments, and said item also authorizes the wife to dispose of $200,000.00 of said trust fund in her will. As to the remainder, or as to the whole amount in the event the widow should not dispose of said $200,000.00, it was provided that said trust fund should be added to the residuary estate in the event the mother of the testator survived the wife, and that said residuary estate should be managed by the trustees for the benefit of the mother of the testator. Upon consideration of the entire will, as well as item six thereof, the court does hereby declare and decree that when the widow elected against the will by taking dower, her election became operative as of the date of the death of her husband, January 25, 1933; and that her election was equivalent to her legal death at the same moment as that of her husband, so far as the terms of the will are concerned; that it is disclosed by the evidence that the mother of the testator, Jennie Elizabeth Baldwin, was living on January 25, 1933, and continued to live until the first day of June, 1933, and for this reason the estate of the said Jennie Elizabeth Baldwin is entitled, as a residuary legatee, to the income from said residuary estate from January 25, 1933, the date of the death of the testator, to

June 1, 1933, the date of the death of the said Jennie Elizabeth Baldwin. The court further declares and decrees that the remainders created in said item six of the will were contingent remainders and that the same would have been destroyed by the election of the widow to take dower, thereby depriving said contingent remainders of a precedent estate to support them, if it were not for the fact that under our law such remainders are accelerated by the termination of the precedent estate. By the election of the widow to take dower, the vesting of said remainder interests was accelerated to the date of the death of the testator and became inoperative as of that date; and, as stated above, the estate of Jennie Elizabeth Baldwin, represented in this case by the defendant, Dwight Murphy, as executor, is entitled, as a residuary legatee, to the income from the said $500,000.00 trust fund for the period of time she lived after the death of said deceased, Albert Charles Murphy; that upon her death her remainder interest in said $500,000.00 trust fund, under the terms of the will of the testator, Albert Charles Murphy, deceased, and the other remaindermen named in item six of the will became entitled to said trust fund as a residuary legacy to be consumed as far as may be necessary pro rata with any other assets in the residuum for the purpose of paying claims of creditors, costs and expenses of administration, estate, inheritance, and succession taxes, both state and federal, and other legal charges against the estate.

"The court further declares and decrees that the testator, Albert Charles Murphy, was domiciled in the County of Dade and the State of Florida at the time of his death; that the situs of the assets of his estate is the County of Dade and the State of Florida, and that the same shall be admin-

istered in accordance with the applicable laws of the State of Florida in force at the time of the death of the testator.

"The court retains jurisdiction of this cause to settle all other questions that this court has jurisdiction to settle under the amended bill of complaint, as amended, and the proceedings thereunder, not settled by this decree, as to the court shall seem just and proper.

"Done and Ordered in Chambers, Miami, Florida, this 5th day of April, 1935.

"ULY O. THOMPSON,
"Judge."

The Last Will and Testament of Albert Charles Murphy, together with its codicil, as probated in Dade County, and as above construed by the decree of the Circuit Court of Dade County in the light of the surrounding circumstances and facts, to which reference has been, or will hereafter be made in this opinion, reads as follows:

"I, ALBERT CHARLES MURPHY, a resident of Miami Beach, Dade County, State of Florida, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all Wills and other Testamentary dispositions at any time heretofore made by me.

"FIRST. I direct that all my just debts, funeral and testamentary expenses be paid as soon as practicable after my decease.

"SECOND. I direct that my Diesel yacht 'SHOGUN' *shall* be sold by my Executors, and that the proceeds of the sale thereof shall be added to and disposed of as a part of my residuary estate.

"THIRD. I give and bequeath all my household furniture, paintings, silver, jewelry, books, automobiles, clothing, and all other personal and household belongings of any nature

of which I die possessed (excluding only the yacht referred to in Paragraph Second), to my wife, THERESA GENETIVE MURPHY. If my said wife, THERESA GENETIVE MURPHY, does not survive me, I give and bequeath the personal property referred to in this paragraph of my Will to my Brother, DWIGHT MURPHY. If my said brother, DWIGHT MURPHY, does not survive me, I give and bequeath the personal property referred to in this paragraph to the brothers of mine who survive me, share and share alike.

"FOURTH. If she is in my employ at the time of my death, I give and bequeath the sum of Two Thousand Dollars ($2,000.00) to my secretary, MISS GRACE MUNSEY.

"FIFTH. If he is in my employ at the time of my death, I give and bequeath the sum of Two Thousand Dollars ($2,-000.00) to my chauffeur, WILLIAM NORTON.

"SIXTH. If my wife, THERESA GENETIVE MURPHY, survives me, I give and bequeath the sum of Five Hundred Thousand Dollars ($500,000.00) to my Trustees hereinafter named IN TRUST NEVERTHELESS, for the following uses and purposes: To invest and reinvest and hold the same as a single trust fund during the lifetime of my wife, THERESA GENETIVE MURPHY, to collect and receive the income therefrom, and, after paying all lawful charges and commissions in connection therewith to pay over the net income derived therefrom to my said wife, THERESA GENETIVE MURPHY, annually, in quarterly installments, during the lifetime of my said wife;

"PROVIDED, HOWEVER, that, of the principal trust fund hereinbefore referred to, the sum of Two Hundred Thousand Dollars ($200,000.00) of such principal shall be subject to disposition by Will, by my said wife, THERESA GENETIVE MURPHY, absolutely and without restrictions of any kind or nature whatsoever, and I direct the Trustees here-

inafter named to convey, assign and pay over said sum of Two Hundred Thousand Dollars ($200,000.00) to the Executors or Trustees named in the Will of my said wife, THERESA GENETIVE MURPHY, at the time of her death for distribution thereof.

"If my mother, JENNIE ELIZABETH BALDWIN, survives my said wife, THERESA GENETIVE MURPHY, then, upon the death of my said wife, I direct that the remaining principal of said trust fund shall be added to and become a part of the trust fund consisting of my entire residuary estate, and shall be held for the same uses and purposes as are specified in Paragraph Ninth of this my Will, and shall be disposed of in accordance with the provisions of said Paragraph Ninth. If my mother, JENNIE ELIZABETH BALDWIN, does not survive my said wife, THERESA GENETIVE MURPHY, then, upon the death of my said wife, THERESA GENETIVE MURPHY, I direct that the remaining principal of trust fund referred to in this Paragraph Sixth of my Will shall be disposed of as follows:

"One-half (1/2) of the remaining principal of said trust fund shall be conveyed, assigned and paid over to my brother, DWIGHT MURPHY, if he survives my said wife, absolutely and forever:

"The other one-half (1/2) of the remaining principal of said trust fund, or if my said brother, DWIGHT MURPHY, does not survive my said wife, THERESA GENETIVE MURPHY, then all of the principal of the said trust fund, shall be conveyed, assigned and paid over to CORNELL UNIVERSITY, of Ithaca, New York, the same to be added to the ALBERT C. MURPHY FUND, and to be used by said CORNELL UNIVERSITY for the purposes specified in sub-paragraph B of Paragraph Ninth hereof.

"SEVENTH. If my former wife, SYLVIA FORD MURPHY, survives me, I give and bequeath the sum of One Hundred Thousand Dollars ($100,000.00) to my Trustees hereinafter named, IN TRUST, NEVERTHELESS, for the following uses and purposes:

"To invest and reinvest and hold the same as a single trust fund during the lifetime of my former wife, SYLVIA FORD MURPHY, to collect and receive the income therefrom, and, after paying all lawful charges and commissions in connection therewith, to pay over the net income derived therefrom to my said former wife, SYLVIA FORD MURPHY, annually, in quarterly installments, during the lifetime of my said former wife. Upon the death of my said former wife, I direct that the principal of said trust fund shall be added to and become a part of the trust fund consisting of my entire residuary estate, and shall be held for the same uses and purposes as are specified in Paragraph Ninth of this my Will, and shall be disposed of in accordance with the provisions of said Paragraph Ninth.

"EIGHTH. If my brother, HARRY PAUL MURPHY, survives me, I give and bequeath the sum of One Hundred Thousand Dollars ($100,000.00) to my Trustees hereinafter named, IN TRUST NEVERTHELESS, for the following uses and purposes:

"To invest and reinvest and hold the same as a single trust fund during the lifetime of my brother, HARRY PAUL MURPHY, to collect and receive the income therefrom, and, after paying all lawful charges and commissions in connection therewith, to pay over the net income derived therefrom to my said brother, HARRY PAUL MURPHY, annually, in quarterly installments, during the lifetime of my said brother. If my mother, JENNIE ELIZABETH BALDWIN, survives my said brother, HARRY PAUL MURPHY, then, upon

the death of my said brother, I direct that the principal of said trust fund shall be added to and become a part of the trust fund consisting of my entire residuary estate, and shall be held for the same uses and purposes as are specified in Paragraph Ninth of this my Will, and shall be disposed of in accordance with the provisions of said Paragraph Ninth. If my mother, JENNIE ELIZABETH BALDWIN, does not survive my said brother, HARRY PAUL MURPHY, then, upon the death of my said brother, HARRY PAUL MURPHY, I direct that the principal of the trust fund referred to in this Paragraph Eighth of my Will shall be disposed of as follows:

"One-half (1/2) of the principal of said trust fund shall be conveyed, assigned and paid over to my brother, DWIGHT MURPHY, if he survives my said brother, HARRY PAUL MURPHY, absolutely and forever; the remaining one-half (1/2) of the principal of said trust fund, or if my said brother, DWIGHT MURPHY, does not survive my said brother, HARRY PAUL MURPHY, then all of the principal of said trust fund, shall be conveyed, assigned and paid over to CORNELL UNIVERSITY, of Ithaca, New York, the same to be added to the ALBERT C. MURPHY FUND, and to be used by said CORNELL UNIVERSITY for the purposes specified in sub-paragraph B of Paragraph Ninth hereof.

"NINTH. I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, of every kind and description and wheresoever situated or located, to my Trustees hereinafter named, IN TRUST NEVERTHELESS, for the following uses and purposes:

"To invest and reinvest and hold the same as a separate trust fund during the lifetime of my mother, JENNIE ELIZABETH BALDWIN, to collect and receive the income therefrom, and, after paying all lawful charges and commissions

in connection therewith, to pay over the net income derived therefrom to my said mother, annually, in monthly installments, during the lifetime of my said mother.

"Upon the death of my said mother, or upon my death if my said mother does not survive me, I direct that the principal of said trust fund, or my entire residuary estate, as the case may be, shall be conveyed, assigned and paid over as follows:

"A.   One-half (1/2) thereof shall be conveyed, assigned and paid over to my brother, DWIGHT MURPHY, if he is then living absolutely and forever; or if my said brother, DWIGHT MURPHY, is not then living, then said one-half (1/2) shall be conveyed, assigned and paid over to CORNELL UNIVERSITY, of Ithaca, New York, and shall become a part of the ALBERT C. MURPHY FUND, and shall be held and used by said CORNELL UNIVERSITY for the uses and purposes, and upon the terms and conditions, more fully set forth in sub-paragraph of this Paragraph Ninth.

"B.   The remaining one-half (1/2) of my said residuary estate shall be conveyed, assigned and paid over to CORNELL UNIVERSITY, of Ithaca, New York, for the following uses and purposes:

"The property and money hereby given to CORNELL UNIVERSITY shall be maintained as a permanent scholarship fund to be known and designated as the 'ALBERT C. MURPHY FUND.' The income from this fund is to be used each year in the payment of a scholarship or scholarships to male students attending CORNELL UNIVERSITY. It is my wish that scholarships granted from this fund shall be sufficient in amount to permit the holders thereof to secure an education at CORNELL UNIVERSITY without the necessity of doing work outside the University curriculum during the academic year for their support, the amount necessary for

this purpose to be determined in each case by the Trustees
of the University; provided, however, that said Trustees
may, in their discretion, create partial scholarships which
may be paid to deserving students who may receive income
or assistance from other sources, or who may, by outside
work during the school year, pay part of their expenses.

"In the granting of these scholarships, it is my wish that
preference be given to students entering CORNELL UNIVER-
SITY from the City of East St. Louis, Illinois, when it is
possible to do so. In case there are no applicants from
said City in any given year who, in the judgment of the
Trustees of CORNELL UNIVERSITY, are qualified, to receive
such scholarships, the University may award such scholar-
ship or scholarships, in their discretion, to other applicants.
In selecting applicants for scholarship, it is my wish that
students who have completed their preparatory education
with high scholarship records shall be given preference;
however, the Trustees of the University may also take other
factors into consideration in determining whether, in their
opinion, any particular applicant is deserving of the assist-
ance which any such scholarship might afford. It is my
wish furthermore that students of Scotch, Irish, English,
German, French or Scandinavian descent may be given
preference, in accordance with such rules, regulations and
conditions as may, from time to time, be established by the
Trustees of CORNELL UNIVERSITY. If the Trustees of the
University should, at any time, consider it desirable to use
a portion of the income from said fund for the purpose of
establishing one or more scholarships which would permit
graduates of CORNELL UNIVERSITY to take graduate work
at CORNELL UNIVERSITY or at other institutions of learning
in the United States, or to travel or study abroad, they shall
have the right to do so. It is my wish that scholarships

shall be awarded each year, and that a scholarship awarded to any student for one year shall be continued during the other years of his University education only if such student is, in the opinion of the governing authorities of the University, deserving of having the same continue. While it is my wish that the income from the fund hereby established be used for the purpose of furnishing scholarships, it is understood that if, in the future, conditions so change that the application of the income of the fund to scholarships is undesirable, the trustees of CORNELL UNIVERSITY shall be free to utilize such income as in their judgment will best serve the welfare of the students of said University.

"TENTH. I direct that all Federal and State inheritance, transfer, estate, succession, legacy, death and other taxes and expense in connection with the administration of my estate be paid out of my residuary estate.

"ELEVENTH. I nominate, constitute and appoint my wife, THERESA GENETIVE MURPHY, and my brother, DWIGHT MURPHY, and GUARANTY TRUST COMPANY OF NEW YORK, which has an office for transaction of business at No. 524 Fifth Avenue, New York City, as Executors of and Trustees under this my Last Will and Testament, and I direct that my said wife, brother and said GUARANTY TRUST COMPANY OF NEW YORK be permitted to serve in both of said capacities without giving bond or other security. If, for any reason, my said brother, DWIGHT MURPHY, should fail to qualify and act, or cease to act, either as Executor of or Trustee under this my Last Will and Testament, I nominate, constitute and appoint my brother, WALTER P. MURPHY, as Executor of and/or Trustee under this my Last Will and Testament, my said brother, WALTER P. MURPHY, to act in either one or both of said capacities in the place and stead of my said brother, DWIGHT MURPHY, with my

878

said wife, THERESA GENETIVE MURPHY, and the said GUARANTY TRUST COMPANY OF NEW YORK, and in the event that my said brother, WALTER P. MURPHY, qualifies as Executor and/or as Trustee, I direct that he be permitted to serve in either or both of said capacities without giving bond or other security. In the event that my said brother, Walter P. Murphy, should fail to qualify and act, or cease to act, either as Executor of or Trustee under this my Last Will and Testament in the place and stead of my said brother, DWIGHT MURPHY, I direct that said Guaranty Trust Company of New York shall act as Co-Executor and/or Co-Trustee, with my said wife, THERESA GENETIVE MURPHY, in the event that my said wife, THERESA GENETIVE MURPHY, should fail to qualify and act, or cease to act either as Executor or Trustee under this my Last Will and Testament, then, I direct that said GUARANTY TRUST COMPANY OF NEW YORK, shall act as sole Executor and/or sole Trustee, without the need of any other Co-Executor or Co-Trustee being appointed in the place and stead of my said brothers and/or my said wife, and in the event that said GUARANTY TRUST COMPANY OF NEW YORK, shall, at any time, be acting as sole Executor or sole Trustee, it shall have the same authority, rights and powers, as are herein given to my Executors and Trustees.

"TWELFTH. I authorize my Executors to retain any securities or other property which I shall own at the date of my death, and to turn all or any part of the same over to themselves as Trustees, in lieu of cash, and I authorize and empower my Trustees to retain and hold such securities or other property so turned over to them as aforesaid as all or a part of any trust herein created, even though such securities or other property may not be of the character required for the investment of trust funds. I direct that

my Executors and Trustees, in making investments or re-investments for my estate or for any trust herein created, shall use their own discretion, and shall not be limited to securities of the character authorized by law for the investment of trust funds. Upon the final distribution of any part or all of the property of my estate, I authorize and empower my Executors and/or Trustees to divide and to convey, transfer and deliver any securities or other property then held by them, in kind, to the persons who may be entitled thereto.

"THIRTEENTH. All extraordinary stock dividends and all realized appreciation in the value of stock, bonds, securities or other property resulting from the sale or other disposition thereof shall be considered principal and not income, but ordinary stock dividends paid regularly by a corporation in lieu of or in addition to regular cash dividends shall be considered income and not principal; provided, however, that the Trustees' determination as to whether any stock dividend is ordinary or extraordinary, and their determination as to whether any stock dividend should be apportioned or set aside, in whole or in part, to principal or income, shall be conclusive and binding upon all persons now or hereafter interested in my estate or any trust hereby created. In the case of the purchase at a premium of any bonds for any trust hereby created, it shall not be necessary for the Trustees to set aside any sum out of the principal to amortize said premium.

"FOURTEENTH. In respect to any investments at any time constituting a portion of my estate or the principal of any trust hereby created, my Trustees shall have the right to join in or become a party to any agreement or reorganization, readjustment, merger, consolidation or exchange, to deposit any such securities, and to pay and charge the prin-

cipal of any such trusts with any sums which may be required thereby, and to receive and hold any new securities issued as a result thereof, whether or not the same be authorized by law for the investment of trust funds.

"FIFTEENTH. My Executors and Trustees are hereby authorized and empowered, though not required, to retain any and all real property of which I die seized, or an undivided interest therein, as a part of the principal of the trusts herein set up, and to lease and release the same from time to time, and to collect the rents therefrom, with full power and authority to dispose of such property, or any part thereof, at public or private sale, and upon such terms as to cash, credit or otherwise, as my said Executors and Trustees may deem proper and advisable, and to execute, acknowledge, and deliver the necessary and proper deed or deeds for transfer to the purchaser or purchasers thereof; my Executors and Trustees shall also have the power and authority to extend existing mortgage or mortgages, and to negotiate a loan or loans upon the security of any such real estate if they deem such loans necessary and advisable, and to make, execute and deliver a mortgage or mortgages as security therefor, and such other papers as may be necessary in connection therewith.

"IN WITNESS WHEREOF, I have to this Will (each page of which contains my signature, for the purpose of identification, in the margin thereof), affixed my hand and seal on the 19th day of January, One Thousand Nine Hundred and Thirty-one.

"ALBERT CHARLES MURPHY (SEAL).

"H. S. BASTAIN.
"A. P. FORCUM.
"WM. J. DUNN.

"Signed, Sealed, Published and Declared by the aforesaid Testator, Albert Charles Murphy, in the sight and presence of us and each of us, as and for his Last Will and Testament, executed January 19th, One Thousand Nine Hundred and Thirty-one, and we, at his request and in his sight and presence, and in the sight and presence of each other, have hereunto subscribed our names as attesting witnesses, at Miami Beach, Dade County and State of Florida, on the 19th day of January, One Thousand Nine Hundred and Thirty-one, this attestation clause having first been read over to us.

| "Names. | Addresses. |
|---|---|
| "H. S. Bastain. | 833 Lincoln Road, Miami Beach, Fla. |
| "A. P. Forcum. | 833 Lincoln Road, Miami Beach, Fla. |
| "Wm. J. Dunn. | 835 Lincoln Road, Miami Beach, Fla. |

"Codicil
"to
"Last Will and Testament of
"Albert Charles Murphy.

"I, Albert Charles Murphy, a resident of Miami Beach, Dade County, State of Florida, being of sound and disposing mind and not acting under duress, menace, fraud or the undue influence of any person, do hereby make, publish and declare this to be a Codicil to my Last Will and Testament heretofore made on the 19th day of January, One Thousand Nine Hundred and Thirty-one, to which said instrument, H. S. Bastain, A. P. Forcum and Wm. J. Dunn were subscribing witnesses, and direct that it be added thereto and be taken as a part thereof:

"First: I hereby give and bequeath the sum of One Hundred Thousand Dollars ($100,000.00) unto my friend, Stevenson Peirce Taylor, at present residing with me, absolutely and forever.

"Second: I do hereby expressly ratify and confirm, republish and redeclare my said Last Will and Testament as hereby and herein modified, amended and extended.

"In Witness Whereof, I have to this Codicil to my said Last Will and Testament (each page of which contains my signature, for the purpose of identification, in the margin thereof) affixed my hand and seal this 11th day of December, One Thousand Nine Hundred and Thirty-two, at the City of Beverly Hills, County of Los Angeles, California.

"Albert Charles Murphy (Seal).

"Arthur L. Erb.
"Bertha Haugen.
"Doris I. Wolfe.

"Signed, Sealed, Published and Declared by the aforesaid Testator, Albert Charles Murphy, in the sight and presence of us and each of us, as and for a Codicil, executed on the 11th day of December, One Thousand Nine Hundred and Thirty-two, to his Last Will and Testament, executed on the 19th day of January, One Thousand Nine Hundred and Thirty-one, and we, at his request and in his sight and presence, and in the sight and presence of each other, have hereunto subscribed our names as attesting witnesses, at the City of Beverly Hills, Los Angeles County and State of California, on the 11th day of December, One Thousand Nine Hundred and Thirty-two, this attestation clause having first been read over to us.

| "Names. | Addresses. |
|---|---|
| "Arthur L. Erb. | 1445 N. Beverly Drive, Beverly Hills, Calif. |
| "Bertha Haugen. | 711 So. Rampart St., Los Angeles, Calif. |
| "Doris I. Wolfe. | 525 No. Detroit St., Los Angeles, Calif." |

A will has no effect other than potentially until it has been probated. Probate of the will of a non-resident affects only the property within the jurisdiction, and has no effect on the validity of the will itself beyond the limited purpose of the plenary power possessed by the State respecting property within its domain. The will involved in this case was first probated in the State of New York as the will of a non-resident. So the New York probate of the involved will did not establish its validity in the State of Florida for the purpose of administering and applying Florida statutes whose effectiveness and operation are by law made contingent upon the fact of probate, such as a widow's right of election to take dower within a specified time after probate of her husband's will from which she dissents. *In re:* Witt's Will, 120 Kan. 200, 243 Pac. Rep. 296, 298; Petitt v. Morton, 28 Ohio App. 227, 162 N. E. Rep. 627; Scripps v. Dunfee, 131 Mich. 265, 90 N. W. 1061.

Under the Florida law applicable to this controversy (Section 5493 C. G. L., 3629 R. G. S.), the widow of Albert C. Murphy, who was a resident of Florida at the time of his decease, had one year after the probate of her husband's will in Dade County in which to make her final election to take dower by dissenting from the will. The time specified in the statute has reference to the principal, primary, original, domestic or domiciliary probate of the will in the State of Florida, inasmuch as the will of a deceased testate domiciled in Florida is involved. This is true, despite the fact that some other State in which testator's property was situated may have acted first in point of time, and theretofore admitted the testator husband's will to original probate in such State.

And in such cases, where the original will has been detained by a foreign court, so that the proponent cannot pro-

duce it for original probate in the State of testator's domicile, secondary evidence thereof for the purpose of original probate becomes admissible, as much so as if it were a lost will. 1 Woerner on American Law of Administration (3rd Ed.) pages 551, *et seq.*

We therefore hold, as did the Chancellor below, that the will of a citizen of the State of Florida who died prior to the Probate Act of 1933, was admissible to original probate in the State of Florida *only* upon proof of the will according to our Florida statutes; therefore that the August 18, 1934, order of the County Judge of Dade County granting original probate of the will on an exemplified photostatic copy and an exemplified record filed therewith, accompanied by the supplementary oath of a witness to the will, was lawfully entered, notwithstanding a prior defective attempt to probate the will as a foreign will in compliance with Section 5475 C. G. L., 3610 R. G. S. That last cited statute is ineffective to accomplish an original or domestic probate where domestic probate is essential.

It follows from what has been said that the widow, Theresa Genetive Murphy, whose husband was, at the time of his death, domiciled in the State of Florida, had the right to dissent from the provisions of the will and to elect to take in lieu thereof a widow's dower in her hsuband's estate on August 20, 1934, which was within one year from the probate of August 18, 1934. This we hold to be so, notwithstanding the fact that after a first probate of the will in New York, the widow had, on February 3, 1934, indicated an intention on her part not to elect to take dower, which inchoate election was specifically receded from by her on August 11, 1934, a date prior to the County Judge's order of August 18, 1934, revoking the probate of January

9, 1934, and awarding an original domiciliary probate of the will as of August 18, 1934.

In response to question 1 (b) the Circuit Court held that when the widow elected to take dower on August 20, 1934, said election took effect as of January 25, 1933, the date of the death of her husband, Albert Charles Murphy. That conclusion was correct and is affirmed on authority of our recent decision in the case of Marjorie Affleck Frazier Henderson, *et al.,* v. Harry A. Usher, *et al.,* 125 Fla. 709, 170 Sou. Rep. 846.

Having now decided that the widow of Albert Charles Murphy was entitled to dissent from her husband's will, and to elect to take a widow's dower in her husband's estate, we pass next to a consideration of what that dower interest shall consist with reference to the liability thereof to bear a proportionate part of (1) estate, inheritance and succession taxes, State or Federal; (2) administration costs and expenses; (3) claims of creditors.

In his final decree, the Chancellor held that the dower of the widow was not subject to the claims of creditors, nor administration costs and expenses, nor to estate, inheritance or succession taxes, State or Federal, against the estate, but that all claims, cost, expenses and taxes involved should be paid out of that portion of the gross estate remaining in the custody of the executors after the widow's dower had been set apart to her.

In the case of Henderson v. Usher, *supra,* decided at the present term, this Court held that although there is a conflict in the decisions as to whether a widow's dower is subject to "death" taxes, the better view is that such dower is subject to the payment of its proportionate share of estate, inheritance and succession taxes assessable against the decedent's estate, and accordingly should be charged there-

with. It was also held in that case that the cost of maintaining and preserving the estate after decedent's death and prior to distribution should be paid from the profits arising from the assets of the estate during that period of time. On the same principle the same rule should obtain as to the expenses of administration of the estate prior to allotment of dower because such expenses are necessarily incurred in the interest of the estate in gross and should come out of it. But as to debts of the decedent, the rule is otherwise, because the plain language of the statute (Section 5494 C. G. L., 3630 R. G. S.) is to the effect that dower "shall be free from all liability for the debts of the decedent" as such.

Section 5494 C. G. L., 3630 R. G. S., simply provides that if there be no children, as in the present case, the widow shall be entitled to one-half of the estate free from all liabilities for the debts "of the decedent." It will be observed that the statute does not say "free from all debts of the decedent," but "free from all liabilities for the debts of the decedent." In fine, the statute is an exemption statute in this particular and exempts the widow's share of her deceased husband's estate from certain burdens that would otherwise attach, but for such statutory exemption, as for example, the instance pointed out in Benedict v. Wilmarth, 46 Fla. 535, 35 Sou. Rep. 84, where no such statutory exemption was stated with reference to the widow when she elects to take a child's part.

Costs of administration, and inheritance, estate and succession taxes are several classes of liabilities to which the decedent's estate, but not the decedent, becomes subject *eo*

*instanti* the death of the testator.* The dower statute in terms has absolutely exempted the widow's share in her husband's estate from only one class of the several stated liabilities, namely, the debts "of the" decedent. There could be no liability upon a decedent, or upon his estate, for "death" taxes until after the decedent's death, for the obvious reason that such "death" taxes could not have been collected during the decedent's lifetime. Therefore such charges are not "debts of" the decedent within the statutory use of that term as employed in Section 5494 C. G. L., *supra*.

We therefore hold that to the extent the Chancellor's decree in answer to question 5 presented in the prayer to the amended bill of complaint is out of harmony with the foregoing statement of the law, such final decree is erroneous and should be reversed with directions to the Chancellor to so amend his decree as to make it conform to the ruling of this Court in this opinion, insofar as it may be inconsistent with the same.

The next question to be considered is whether certain indebtedness of the decedent to the Transportation Equipment Company of Canada, Limited, should be recognized and paid, or whether the said indebtedness should be wholly ignored and disregarded, both as a debt owed by the decedent to the Transportation Equipment Company and as an asset of the Transportation Equipment Company. The lower court held that the corporate fiction of the corporation, the

---

*The requirement of the "Tenth" paragraph of the will to the effect that all Federal and State inheritance, transfer, estate, succession, legacy, death and other taxes and expenses connected with the administration of the estate be paid out of the residuary estate was rendered ineffective as to the widow because of her election to take against the will. In paragraph 4 of the declamatory decree the Chancellor properly so held.

Transportation Equipment Company, should not be disregarded and that the declaratory decree of the court should be entered in accord with that view, which was done.

During his lifetime the decedent completely owned and dominated a corporation organized by him under the name, Transportation Equipment Company of Canada, Limited. The directors of the corporation were mere dummies. The company issued 582 shares of stock, of which 578 shares were at all times registered in the name of decedent. All dividends were received by him, the holders of the other qualifying shares endorsing their dividend checks over to the decedent as a matter of course. At the time of testator's death he had in his possession the four qualifying shares held by the directors from time to time. These shares were endorsed in blank by the record owners thereof.

Several years prior to his death the testator purchased or built the yacht "Shogun" for the sum of $245,647.08, which amount was furnished by the Transportation Company of Canada, Limited. The testator executed his note to the Transportation Company for this amount and secured it by a mortgage on the yacht "Shogun."

After the decedent's death the yacht was sold for approximately $72,000.00. In order to transfer the title the Transportation Company executed a satisfaction of its mortgage upon the written guaranty of the executors to save the Transportation Equipment Company harmless by reason of said satisfaction, the written guaranty reciting that the indebtedness had not been paid, although full payment was recited in the satisfaction of mortgage.

In view of the fact that the decedent's indebtedness was to a corporation wholly owned by him, the question is presented whether the indebtedness of the decedent to the Transportation Equipment Company should be recognized

and paid or whether the said indebtedness should be wholly ignored and disregarded, both as a debt owed by the decedent to the Transportation Equipment Company and as an asset of the Transportation Equipment Company.

It is the contention of appellants that the said indebtedness is, in truth and in fact, an indebtedness of the decedent to himself and that the corporate fiction should be ignored. The corporation was owned solely by the decedent for the purposes of convenience in the transaction of his business.

The indebtedness of the deceased in the sum of $245,-647.08, for which the testator had executed his note, secured by a mortgage on the yacht "Shogun," to Transportation Equipment of Canada, Limited, was not a purchase money obligation in a legal sense, nor had the widow joined in the mortgage so as to be estopped to claim her dower with respect to that transaction.

The evidence in this case discloses that one of the executors took charge of and sold the yacht "Shogun" encumbered by said mortgage, receiving therefor, as a result of the depression, but $72,000.00 as the sales price of same. If the corporate fiction is not to be disregarded, the yacht is an asset of the estate while the $245,747.08 mortgage is a liability of the estate. At the same time the widow is a large stockholder in the corporation by reason of her dower claim. On the other hand, if the corporate fiction is ignored a radically different situation will prevail.

Under the statutes of Florida the widow became interested in the assets of the estate, but not in its liabilities. Therefore the consideration of $72,000.00 brought from the sale of the yacht is an asset in which the widow has an interest, while the liability of the decedent's estate for the $245,-647.08 indebtedness secured by a mortgage on said yacht

is a liability for which the residue of the estate, and not the portion of it constituting the widow's dower, is responsible.

The intention of the testator is the polar star to guide in the construction of a will. The purpose of this proceeding was to construe the will of Albert Charles Murphy and to order distribution accordingly. The testator was satisfied to deal with Transportation Company of Canada, Limited, as a corporation up to the time of his death. It would do violence to the obvious intention of the testator for the corporation, which he maintained as a separate entity and dealt with as such in his lifetime, to be now declared a mere fiction for the purpose of defeating the statutory dower rights of the widow. The corporation was not mentioned in the will and testator had the right to presume that it would be recognized as the separate corporate entity it purported to be insofar as construction of the testator's will is concerned.

The rule that a corporation, or business conduit, of a person may be disregarded when used as his *alter, ego* has no application in a case like this where the intention of the testator is the proposition in issue and no application of such rule is essentially required in order that the ends of justice may be met, or fraudulent purposes defeated. Compare: Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 Sou. Rep. 560; Third Avenue Co. v. Keely, 111 Fla. 46, 146 Sou. Rep. 30; Hirsch v. Lincoln Securities Co., 118 Fla. 164, 160 Sou. Rep. 12.

So the holding of the Chancellor set forth in paragraph (9) of the declaratory decree is affirmed.

The next proposition to be discussed is the holding of paragraph (10) of the declaratory decree relating to the ultimate disposition of the principal of the $500,000.00 spe-

·cial trust fund set up in the sixth clause of the will for the primary benefit of testator's widow during her lifetime.

The sixth clause of the will bequeathed $500,000.00 to trustees to be held in trust for the purpose of investment and the proceeds paid to the beneficiaries as named in said clause. It provided that the income from said trust fund should be paid to the widow for life, and that the principal of the said trust fund remaining after the enjoyment of the widow's rights therein, should be added to and become a part of the trust fund consisting of the entire residuary estate, to be managed by the trustees and the income therefrom paid to the testator's mother for life in the event the mother survived the widow.

The widow did not die before the testator's mother, but did elect to take against the will. The widow thereby brought about her constructive death *nunc pro tunc* as of the date prior to the natural death of testator's mother, who had died before the widow's election against the will was finally declared, but who in contemplation of law is the widow's survivor under the will.

The Chancellor decided that when the widow elected to take dower she became constructively dead* as of January 25, 1933, the date of testator's death, and that therefore the testator's mother, Jennie Elizabeth Baldwin, who was living on January 25, 1933, the date of the widow's constructive death, and who continued to live until June 1, 1933, became entitled to the income from the residuary estate from January 25, 1933, the date of the testator's death, until June 1, 1933, the date of the mother's death. With that part of the Chancellor's holding there is little contro-

---

*But constructively dead only after having survived the testator for a sufficient length of time to make an election in accordance with law to take against the will as of the date of the testator's death.

versy between the parties. to the appeal, so further discussion of it is unnecessary.

Item Six of the Will, however, provided that if the mother, Jennie Elizabeth Baldwin, survived the widow, then the principal of said $500,000.00 trust fund should be added to and become a part of the trust fund consisting of the testator's entire residuary estate, and should be held for the purposes specified in paragraph Ninth of the will, to be ultimately disposed of in accordance with said paragraph Ninth. But said Item Six of the Will also provided that if the testator's mother did not survive the wife then, upon the death of the wife, the remaining principal of the said trust fund should go: (1) one-half to testator's brother, Dwight Murphy, absolutely and forever in the event said brother should have survived the widow; (2) that the other one-half of the remaining principal of said trust fund should be conveyed and assigned to Cornell University to be added to the "Albert C. Murphy Fund." Said Item Six likewise disclosed the intention of the testator to the effect that if the testator's brother, Dwight Murphy, did not survive the widow, Theresa Genetive Murphy, that then *all* of the remaining principal of said $500,000.00 trust fund, as set up in said Item Six of the Will, should by reason thereof become the property of said Cornell University, thereby giving Cornell University the whole of said fund in the event the widow lived to survive the testator's said brother, Dwight Murphy.

Item Ninth of the Will provided that upon the death of testator's mother, if she survived testator (which she did) that the principal of said trust fund, or the entire residuary estate, *as the case might be,* should be conveyed, one-half to testator's brother, Dwight Murphy, if living at the time of the mother's death, or if not, then such one-half to Cornell

University to be added to the other one-half of such fund that had been given to said Cornell University in any event.

The Chancellor decided that the bequest of the income of the $500,000.00 trust fund to the testator's mother, and the bequest of the principal of that fund to testator's brother, Dwight Murphy, and to Cornell University, were contingent remainders and that they were accelerated by the widow's election to take dower because such election terminated her precedent estate in the subject matter, and that by reason thereof, that the estate of the mother, Jennie Elizabeth Baldwin, became entitled, as a residuary legatee, to the income from the $500,000.00 trust fund for the period of time the mother lived after the testator's death, but that upon said mother's death, that the remaindermen, Dwight Murphy and Cornell University named in Item Nine as well as in Item Six of the Will, became entitled to the principal of said $500,000.00 trust fund as general residuary legatees under Item Ninth of the Will, subject to the consumption of such legacy, if necessary, or pro rata as the case might be, to pay the legal charges against the estate.

Both the appellants, Dwight Murphy and Cornell University, contend that since the widow elected against the will, that the $500,000.00 bequest made to the trustees for her benefit in the Sixth Item of the will, should be set up as a general legacy in trust for the benefit of the remaindermen in being at the time the widow's election to take dower became effective, but they disagree as to the nature and extent of the respective interests of said remaindermen so set up.

The principle of acceleration in the vesting of a remainder by premature termination of the preceding life estate rests upon the presumed testamentary intentions of the testator. It will be applied only to the extent that it promotes

that intention and never when it defeats it. It is resorted to only because the law must have a settled and uniform rule that will be applicable in most cases, but nevertheless not such a rule as will defeat the testamentary intent when such intent is clearly discernible to the contrary in the terms of the will itself.

The manifest intention plainly evident from the scheme set up in the testator's will is that Cornell University and Dwight Murphy should, if possible, take the Trust Fund as a general bequest under paragraph Six of the will, unless the testator's wife and after her, the testator's mother, Jennie Elizabeth Baldwin, should be alive and capable of enjoying it. Such manifest intention should not be arbitrarily thwarted nor completely destroyed by the application of technical rules of law relating to acceleration of remainders following life estates, where it is clear, as it is here, that the testator intended no such result to follow upon the widow's mere constructive death as distinguished from her natural death occurring prior to June 1, 1933, the date upon which testator's mother, Jennie Elizabeth Baldwin, the next in interest, died. So while the wife's voluntary constructive death *nunc pro tunc* resulted in the premature destruction of her own life estate under paragraph Six of the will it should not defeat *ex proprio vigore* the interests of the others that follow her and that still may be given effect in accordance with the testator's originally expressed intention subject only to the widow's rights at law arising out of her election to take against the will. See: Scotten v. Moore, 28 Del. 545, 93 Atl. Rep. 373.

The law's equivalent of death is not in fact death. So where a testator clearly has in mind natural death and not death's legal equivalent, natural death, and not death's legal equivalent, should be deemed the contingency upon which

the testator intended his will to operate, when natural death is the contingency so indicated.

The holding of the Circuit Court was evidently predicated upon the view that the $500,000.00 trust fund passed into the residuum of the estate because the mother, Jennie Elizabeth Baldwin, survived the constructive death of the widow occasioned by her election to dissent from the will, and that therefore a life estate rested in Jennie Elizabeth Baldwin from January, 1933 (the date of the testator's actual death and of the widow's constructive death) until June, 1933, the date of the actual death of the testator's mother, Jennie Elizabeth Baldwin.

The rule that the election of a widow to take against her deceased husband's will has the effect of accelerating the vesting of remainder interests, is primarily a rule to be observed in the interest of effecting early settlements of estates. But like all other rules relating to the construction of wills, it it not an arbitrary rule of construction that must be followed in every case without exception. On the contrary, it, like all other generally accepted rules for the construction of wills, yields to the manifest intention of the testator when such intention is plainly discernible from the will to the contrary of the rule's application in a particular instance. Redfearn, Wills and Administration of Estates in Florida, page 222; Wallace v. Wallace, 118 Fla. 844, 160 Sou. Rep. 377; Sorrels v. McNally, 89 Fla. 657, 105 Sou. Rep. 106. Compare: Lowrimore v. First Savings & Trust Co., 102 Fla. 740, 140 Sou. Rep. 887, 891. Sell also: *In re* Portuondo's Estate, 185 Pa. St. 503, 39 Atl. Rep. 1105; *In re:* Vance's Estate, 141 Pa. St. 201, 21 Atl. Rep. 643.

Neither is the rule that the election of the widow to take against the will is equivalent to her death an inflexible one

to be applied for *all* purposes. The principle is well settled that the law is different when there are other trusts in a will besides those for the widow, and it is necessary to depart from the rule of presumptive death of the widow by reason of her election to take against the will, in order to carry out a superior or manifest intent of the testator that would otherwise be defeated. The object in every case where rules of construction are resorted to in will cases is not to produce a distribution which the court may think equal or more equitable, but to approximate as closely as possible to the scheme of the testator which has failed by reason of intervening rights or circumstances. Hence the regular order will never be departed from except of necessity and then only to the extent that necessity requires.

Thus, while the testator's intended disposition of his estate may be interfered with by an election of the widow that in its result is to be treated as equivalent to her death for most purposes, the Court is nevertheless under a duty to carry out the testator's will as nearly as possible in all other respects and not to treat the widow as *naturally* dead when dealing with a bequest that obviously was intended to comprehend *natural* death, rather than constructive death, of the widow, as a predicate for its alternative disposition in the will. In short, the widow may not be considered *for all purposes* to have died at the moment of the death of the testator when she elects to take dower as against the will, if the intention of the testator as discernible from the will itself is that other trusts set up in the will besides those for the widow are to be contingent for their ultimate disposition only upon the contingency of the *natural* death of the widow with reference to the testator's intended disposition as made in the will. *In re:* Portuondo's Estate (*supra*), 39 Atl. Rep. 1105.

We think it is evidence from the will itself that the testator meant to set aside a Trust Fund of $500,000.00 for the beneficial use of his wife for life, with a right to dispose of $200,000.00 of it by her will if she so elected, but otherwise the entire sum to go, at the wife's death, to the testator's mother, Jennie Elizabeth Baldwin, if living, for life, with remainder to Cornell University and Dwight Murphy.

Our conclusion with respect to the will here involved is that under the will the $500,000.00 trust fund specified in Item Six must be regarded as having been set up despite the widow's election to take dower as against the will, which election defeats the initial trust required to be subserved by said trust fund.

We are further of the opinion that the income from said trust fund became payable to the executor of the estate of the testator's mother, Jennie Elizabeth Baldwin, from the date of the testator's death up to the date of death of testator's mother on June 1, 1933; that as of the date of the death of testator's said mother, that the principal of the $500,000.00 trust fund passed by the specific terms of Item Six of the Will and not under the Ninth Paragraph of said Will; that when it did pass it passed as a general bequest to the residuary trust fund described in Item Nine of the Will and that said $500,000.00 principal (less the amount, if any, as it must contribute ratably with other general legacies toward the widow's dower) should thereupon be divided; one-half to Dwight Murphy (who has not died before the termination of the widow's natural life) and one-half to Cornell University in accordance with testator's manifest intent that these two beneficiaries should enjoy such fund after the cessation of interest in it on the part of the testator's wife and mother, disregarding for this purpose the application of any merely technical rules of con-

struction predicated upon an hypothesis of the presumed, but not natural, death of the widow occasioned by her declaration of an election to take dower made by her after the circumstance of the testator's mother's death had occurred.

Paragraph (1) of the Circuit Court's declaratory decree is accordingly reversed with directions to reform same to accord with the law of this case as decided in this opinion and to decree distribution to be made accordingly.

The Circuit Court held and decreed that where an estate consists entirely of personal property, the widow, upon her election to take dower as against her husband's will, is entitled to one-half of the gross estate as it existed at the date of the death of the deceased, together with mesne profits on her dower portion of the estate up to date of the assignment and delivery of her dower to her, there being no children and no lineal descendants of the deceased. That holding we affirm on the authority of the statute law of this State.

We likewise affirm without detailed discussion of same, the holdings and decree of the Chancellor to the effect that (1) the widow, having elected to take dower, the dower of the widow in her husband's estate, has priority over any specified or general bequests contained in her husband's will; (2) that the election of a widow to take dower as against her husband's will makes inoperative the provisions of the will for the widow's benefit, but does not nullify all of the provisions of the will, nor otherwise affect the provisions of the will as to the portion of the testator's estate left after the widow's dower has been set apart; (3) that the order of priority among the other beneficiaries in the will remain as though the widow had not elected to take dower; (4) that the residuary legacies will be consumed

first in the payment of the legal charges against the estate, but if there should not be sufficient funds in the residuum, that the rules of law as to the abatement of general and specific legacies shall then apply; (5) that the renunciation of the widow of her husband's will and her election to take dower does not deprive her of her right to compensation for acting as executrix in the administration of her husband's estate and that (6) the testator, Albert Charles Murphy, was domiciled in Dade County, Florida, at the time of his death in January, 1933, and that his estate shall be administered in accordance with the applicable laws of the State of Florida in force at the time of testator's death. And in all other particulars not herein specifically mentioned, the said final decree, after being modified to accord with the holdings of this opinion as hereinbefore set forth, is also affirmed.

The decree appealed from is reversed in part and remanded with directions for appropriate amendment and modification of said decree not inconsistent with the opinion of the Supreme Court in the premises herein considered and decided as set forth in this opinion, the costs of this appeal and of the whole cause to be apportioned in the final decree in such manner as the Chancellor shall deem equitable in proportion to the several interests of the parties involved in the questions raised of record and required to be determined in this controversy for the respective benefit of such parties.

Reversed in part and remanded with directions.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, P. J., not participating.

PER CURIAM.—The will has been interpreted so as to effectuate the intent of the testator (as ascertained by the court upon due consideration of all provisions of the will), insofar as the ascertained testamentary intent can be made effective without violating the statutory dower rights of the widow or the controlling provisions of law.

The statute defines dower in personalty and provides that such dower "claim shall have precedence over all others, and the said share shall be free from all liability for the debts of the decedent." Sec. 5494 (3630) C. G. L. Thus the statute refers to dower as a "claim" and as a "share." The estate tax upon "any legacy or share in the distribution of the estate," Sec. 1342 (19) 1936 Supp. to C. G. L., includes "the dower of a widow who has dissented from her deceased husband's will." See Henderson v. Usher, decided at this term.

The holding in this case that expense of administration of the decedent's estate after his death and prior to the allotment of dower should be paid from the gross estate, does not warrant an assumption as suggested by a petition for rehearing, that all expenses that may be incurred by executors in litigation that unduly hinders or delays the allotment of dower to the widow, should be paid from the assets of the estate before dower is allotted.

Rehearing denied.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL, and BUFORD, J. J. ,concur in the opinion and judgment.